UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY LYNN ANDERSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No.　1:24-cv-00848-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 14, 19). |

This matter is before the Court on Plaintiff Tracey Lynn Anderson's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 8).

Plaintiff raises the following issue:

A. The physical residual functional capacity ("RFC") determination is not supported by substantial evidence because the Administrative Law Judge ("ALJ") failed to account for Plaintiff's medically determinable impairment of right ulnar neuropathy.

Having reviewed the record, administrative transcript,[1] parties' briefs, and the applicable

---

[1] ECF No. 11-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the

1

law, the Court finds as follows.

## I. ANALYSIS

Plaintiff's argument challenges the ALJ's formulation of the following physical RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb ramps and stairs, balance, crouch, crawl, stoop, bend, and kneel. He cannot climb ladders, ropes, or scaffolds. He should avoid exposure to unprotected heights, dangerous or moving machinery, and machine parts. **The claimant can frequently handle and finger with the bilateral upper extremities.**

(AR 20–21) (emphasis added). In particular, Plaintiff contends that this RFC of medium work with a limitation that he "can frequently handle and finger with the bilateral upper extremities" is not supported by substantial evidence because the ALJ failed to account for his medically determinable impairment of right ulnar neuropathy (also known as cubital tunnel syndrome). (ECF No. 14 at 7–17).[1] In response, the Commissioner argues that the RFC is supported by substantial evidence, that the ALJ had no duty to further develop the record (or alternatively, that Plaintiff has forfeited this argument), and that the ALJ did not err in his consideration of Plaintiff's cubital tunnel syndrome. (ECF No. 19 at 3–16).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal citation omitted).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Soc.

---

[1] CM/ECF document number and page.

2

Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). A medically determinable impairment is one that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. "[T]he impairment 'must be established by medical evidence from an acceptable medical source,' and the ALJ 'will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." Poliakov v. King, 2025 WL 457097, at *1 (9th Cir. 2025) (quoting 20 C.F.R. § 404.1521).

### A. Plaintiff Had a Medically Determinable Impairment of Right Ulnar Neuropathy

Plaintiff first asserts that the medical evidence established that he had a medically determinable impairment of right ulnar neuropathy. (ECF No. 14 at 8–11). In terms of medical evidence, Plaintiff specifically points to a nerve conduction (EMG) study, dated January 31, 2022, which showed "evidence of severe right ulnar neuropathy" and "mild compression neuropathy (Carpal Tunnel Syndrome) of the median nerves across the wrist B/L." (AR 345). At a February 11, 2022 appointment after the study, Plaintiff's provider, Dr. Meryl Livermore, M.D., discussed the EMG study results with Plaintiff and assessed that the study "confirmed severe ulnar nerve compression." (AR 348; see also AR 347 (noting that the EMG study confirmed "severe right ulnar nerve entrapment" in addition to mild bilateral carpal tunnel syndrome)). Dr. Livermore recommended that Plaintiff undergo "decompression surgery due to [the] severe level" of compression and "existing intrinsic atrophy." (Id.) Plaintiff, however, declined surgical intervention at that time because he reportedly wanted to take care of his leg condition first. (Id.) Plaintiff also points to other medical providers who assessed that he had cubital tunnel syndrome in his right hand or noted his worsening right hand pain, numbness, and tingling. (See, e.g., AR 388–39 (November 16, 2022 appointment where nurse practitioner Timothy Thiesen assessed that Plaintiff had right cubital tunnel syndrome and bilateral carpal tunnel syndrome, and recommended occupational therapy and use of a "bilateral soft wristlet . . . along with a right elbow brace"); AR 402 (October 2022 appointment with complaints of bilateral hand pain)).

Although the ALJ did not explicitly state in his decision whether he found Plaintiff's right ulnar neuropathy to be a medically determinable impairment, the ALJ acknowledged the

3

existence of the above medical evidence, as set forth below:

> Later that month [January 2022], motor and sensory nerve conduction studies showed evidence of **severe right ulnar neuropathy** and mild carpal tunnel syndrome, bilaterally. In February 2022, surgical intervention was discussed but the claimant said that he wanted to care of his leg condition first. By November 2022, the claimant complained that his bilateral hand numbness and tingling progressed; notes reflect that a bilateral soft wrist and right elbow brace were to be ordered. The claimant declined injections and was not interested in surgery.

(AR 22 (record citations omitted and emphasis added)). This summary makes clear that the ALJ, at the very least, recognized that right ulnar neuropathy was a medically determinable impairment in Plaintiff's treatment records. Moreover, the Commissioner does not dispute in his briefing that there was a medically determinable impairment of right ulnar neuropathy in the medical evidence.

Accordingly, upon review, the Court agrees with Plaintiff that there was medical evidence establishing that he had a medically determinable impairment of right ulnar neuropathy prior to his hearing before the ALJ on September 13, 2023.

### B. The ALJ Failed to Consider whether Right Ulnar Neuropathy was a Severe Impairment at Step Two

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe at step two:

> An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); see Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985).

Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005). A step two finding must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 686.

In his written decision, the ALJ found at step two that Plaintiff had only two severe impairments: carpal tunnel syndrome and obesity. (AR 19). The ALJ determined that Plaintiff's hypertension, knee issues, varicose veins in the lower extremities, leg pain, and pre-diabetes were non-severe impairments, as set forth below:

> The claimant alleged in his Disability Report that he is disabled due to high blood

> pressure. The record shows a diagnosis of hypertension; however, the claimant receives conservative treatment of medication management. While compression stockings and short stretch wraps were recommended, the claimant testified that he does not use these items. The claimant also has prediabetes, for which diet and exercise were recommended. Imaging shows that the claimant had small degenerative calcifications and minimal osteophyte spurring in the right knee. While the claimant had trace to 1+ crepitus in the claimant's left knee at the consultative exam and limited range of motion in the knees in September 2021, per testimony the claimant does not use knee braces as recommended. Additionally, the claimant has not received significant treatment for this condition.
>
> Lastly, the record reveals that the claimant has varicose veins in the lower legs that were small to moderate in size and caused very slight venous stasis changes. The claimant testified that standing for long is hard because his legs start to hurt. Notes reveal that the claimant has been instructed to elevate his legs, use compression therapy, and exercise. However, as noted above, the claimant testified that he does not wear compression stockings because they are tight and that he last had treatment for his legs in 2021 or 2022. He noted that he elevates his legs in bed 10 to 15 minutes each night while sitting once every other day. Despite allegations of leg pain, the claimant presented to his consultative exam with normal gait and station. Additionally, he consistently denied gait abnormality. This does not appear to be an overt concern.
>
> These impairments are non-severe because the medical evidence establishes that the claimant has only a slight abnormality that has no more than a minimal effect on his ability to perform basic work activities for at least 12 months.

(AR 19–20 (record citations omitted)).

The above discussion makes clear that the ALJ did not address whether Plaintiff's right ulnar neuropathy was a severe impairment at all in his step two findings. The ALJ's failure to do so constitutes clear error.

The Commissioner, however, argues that the ALJ did not commit harmful error because the ALJ considered Plaintiff's right ulnar neuropathy in subsequent steps of the analysis. The Court recognizes that any error in failing to find an impairment severe at step two is harmless where the ALJ considers the impairment in subsequent steps of the analysis. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, however, the ALJ failed to consider the impairment in subsequent steps.

First, the ALJ did not consider whether right ulnar neuropathy met or medically equaled a listing at step three. (See AR 20). And although the Court considered whether Plaintiff's carpal tunnel syndrome, by itself, met or medically equaled "listing 11.00, neurological system", the

5

ALJ did not consider whether the combination of carpal tunnel syndrome and right ulnar neuropathy met this listing. (Id.)

Second, in formulating Plaintiff's RFC, the ALJ acknowledged the medical evidence indicating that Plaintiff had severe right ulnar neuropathy for which surgical intervention was recommended:

> Later [in January 2022], motor and sensory nerve conduction studies showed evidence of **severe right ulnar neuropathy** and mild carpal tunnel syndrome, bilaterally. In February 2022, surgical intervention was discussed but the claimant said that he wanted to care of his leg condition first. By November 2022, the claimant complained that his bilateral hand numbness and tingling progressed; notes reflect that a bilateral soft wrist and right elbow brace were to be ordered. The claimant declined injections and was not interested in surgery.

(AR 22 (record citations omitted and emphasis added)). But apart from this summary, the ALJ did not address whether Plaintiff had any functional limitations arising from his diagnosed severe right ulnar neuropathy, either by itself or in combination with, his bilateral carpal tunnel syndrome. Nor did the ALJ explain why an RFC limiting Plaintiff to frequent handling and fingering with the bilateral upper extremities accounted for the severe right ulnar neuropathy.

Additionally, the medical opinions the ALJ discussed in his RFC discussion did not consider Plaintiff's right ulnar neuropathy. The only consultative examination in the record—that of Dr. Roger Wagner, M.D.—took place prior to Plaintiff's EMG study. (See AR 23; AR 339 (consultative examination on January 10, 2022); AR 345 (January 31, 2022 nerve conduction studies showing severe right ulnar neuropathy)). The state agency medical consultants similarly failed to consider Plaintiff's right ulnar neuropathy. As the ALJ noted, the initial state consultant, Dr. Norman Staley, M.D., only considered Plaintiff's non-severe impairment of hypertension. (AR 23). Dr. Staley's opinion was also issued in August 2021, approximately four months prior to the EMG study. And as for the ALJ state consultant upon reconsideration, Dr. J. Rule, M.D., the ALJ found that Dr. Rule "fail[ed] to consider [Plaintiff's] carpal tunnel syndrome with reported hand pain" as set forth in exhibit 3F – which were the EMG study results showing not only mild carpal tunnel syndrome, but also the severe right ulnar neuropathy. (AR 23). Thus, the Court does not find that the ALJ adequately considered Plaintiff's right ulnar neuropathy when he formulated an RFC limiting Plaintiff to frequently handling and fingering.

Based on the foregoing, the Court concludes that the ALJ committed error in his

consideration of Plaintiff's medically determinable impairment of right ulnar neuropathy.

### C. Remand for Payment of Immediate Benefits is not Appropriate

Plaintiff concludes by requesting an award of benefits, or, alternatively, for a remand for further proceedings. (ECF No. 14 at 17). Defendant argues that, if this Court overturns the ALJ's decision, the proper remedy is a remand for further administrative proceedings. (ECF No. 25 at 15-16).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, after review of the record as whole, the Court concludes that a remand for further proceedings is appropriate. As discussed above, the ALJ erred by failing to consider whether Plaintiff's right ulnar neuropathy was a severe impairment. The ALJ also failed to consider that impairment in the later steps of the opinion. Accordingly, the Court cannot find that the record has been fully developed and further administrative proceedings would serve no useful purpose.

## II. CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. On remand, the ALJ is directed to consider whether Plaintiff's medically determinable impairment of right ulnar neuropathy requires additional limitations in Plaintiff's RFC and, if so,

whether those changes affect the ALJ's ultimate disability determination.

The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:  **April 8, 2025**                    /s/ Erica P. Grosjean
                                             UNITED STATES MAGISTRATE JUDGE